IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
    *Plaintiff,*

  v.          Case No. **16-20032-JAR**

**LORENZO BLACK,**
**KARL CARTER,**
**ANTHON AIONO,**
**ALICIA TACKETT,**
**CATHERINE ROWLETTE, and**
**DAVID BISHOP,**
    *Defendants.*

## RESPONSE TO GOVERNMENT'S MOTION TO RECONSIDER

The United States asked the Court to appoint a special master, but now complains that the Court abused its discretion by apportioning the master's costs to the government. It advances two arguments. First, that sovereign immunity shields it from such an apportionment. Second, that the special master will be too expensive in the context of this case.[1] We take these contentions in order.

### Arguments & Authorities

The government recognizes at the outset that the Court has broad discretion in ruling on this motion. "The decision whether to grant or deny a

---

[1] U.S. Mot. for Recon. 13 (D.E. 163 Oct. 27, 2016).

motion to reconsider is committed to the court's sound discretion."[2] Thus, the government sets a high bar for itself at the outset. It must prove more than that the Court made "merely an error of law or judgment, but an overriding of the law by the exercise of manifestly unreasonable judgment… ."[3] The error must be so egregious as to rise to constitute a "judicial action which is arbitrary, capricious, or whimsical."[4]

### 1. Sovereign immunity does not bar the Court from assessing the cost of the special master to the United States.

This issue is framed by the government's concessions. The government concedes that, in "a given case, fairness may suggest that the expense [of the Special Master] be borne by [only] one of the parties."[5] The Tenth Circuit has explained how to strike that balance. The "expense of the Master, caused by the wrongdoer, should be borne by the wrongdoer."[6] This Court has applied that principle, concluding that the Department of Justice bears the blame for the present situation.[7] The government does not disagree. The Court's

---

[2] D.E. 163 at 3 (citing *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1395 (10th Cir. 1988)).

[3] *United States v. Wright*, 826 F.2d 938, 943 (10th Cir. 1987) (citing 1 *Words and Phrases* 45 (1986 Cum. Supp.).

[4] *Pelican Production Co. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (citing *Wright* at 943).

[5] D.E. 163 at 14, citing *Brock v. Ing*, 827 F.2d 1426, 1428 (10th Cir. 1987).

[6] *Brock,* 827 F.2d at 1428.

[7] D.E. 118 at 145-6 ("The Court has no money to do this. I've done a lot of checking. There – there really is not a fund for this. Given that the reason we're here is

apportionment of expenses to the government hews carefully to Tenth Circuit precedent.

The government next invokes the doctrine of sovereign immunity to evade its responsibilities. That doctrine ordinarily insulates the government from assessment of costs without its consent. But it concedes that the government has waived its sovereign immunity in the civil context, noting that the "law seems well-settled that the Court may apportion the costs of a special master under Rule 53 to the United States in a civil case if the United States is a party."[8] And it admits that the waiver extends to the criminal context as well: "the district court in some instances has ordered the United States to pay the costs of a special master in criminal cases[.]"[9]

After retreating this far, the government sets its final line of defense by contending that "the Court may not use a Civil Rule of Procedure to imply

---

because of violations perhaps by – by CCA, which contracts with the Department of Justice through the U.S. Marshals Service, and given that at least there are allegations that the U.S. Attorney's Office improperly, whether it's intentionally or inadvertently, disclosed privileged communications, it seems to me that the Department of Justice should pay for this."); Fed. R. Civ. Pro. 53(g)(3) ("The court must allocate payment among the parties after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master.")

[8] D.E. 163 at 16. *See, e.g., Trout v. Ball*, 705 F.Supp. 705, 708 (D.C. 1989) (sovereign immunity does not shield the government from paying cost of a special master).
[9] D.E. 163 at 16.

waiver"[10] of sovereign immunity. Special masters are provided for in a civil rule — Federal Rule of Civil Procedure 53. The foundation of the government's argument is that the Federal Rules of Civil Procedure do not apply in criminal cases, and since Rule 53 is a civil rule, it does not abrogate the government's sovereign-immunity defense in this criminal case.

But if the government is right, then its motion to reconsider must be denied. As this Court has recognized, "[t]here is no specific rule in the Federal Rules of Criminal Procedure providing for reconsideration of a ruling on a criminal matter."[11] If, as the government contends, the civil rules never apply in criminal cases, then it has no basis in the criminal rules to file its motion to reconsider. Only by invoking the civil rules in this criminal case may the government avail itself of the opportunity to file its motion.[12] So,

---

[10] D.E. 163 at 20.

[11] *United States v. Miller*, Not Reported in F.Supp.3d, 2008 WL 2783146 at 2 (D. Kan. 2008); *United States v. Morales*, Not Reported in F.Supp.3d, 2016 WL 4069655 at 2 (D. Kan 2016) ("Fed. R. Civ. P. 59 and 60 govern motions to reconsider dispositive orders" in criminal cases.)

[12] *United States v. D'Armond*, 80 F.Supp.2d 1157, 1170 (D. Kan. 1999) ("the standards for evaluating a motion to reconsider in the civil context are relevant for evaluating a motion to reconsider in a criminal case."); *United States v. Morrison*, 521 F.Supp.2d 246, 252 (E.D. N.Y. 2007) ("There is no specific rule, either in the Federal Rules of Criminal Procedure or in this Court's Criminal Local Rules, providing for the reconsideration of a ruling on a criminal matter.")

only by admitting that the civil rules apply to criminal cases may the government even ask this Court for the relief it seeks.

But the government is obviously wrong, and its motion must still be denied. As this Court has recognized, when "the Rules of Criminal Procedure do not speak specifically to a matter, a court conducting a criminal case is permitted to draw from and mirror a practice that is sanctioned by the Federal Rules of Civil Procedure."[13] This practice is grounded in Federal Rule of Criminal Procedure 57(b):

> (b) **Procedure When There Is No Controlling Law.** A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local district rules unless the alleged violator was furnished with actual notice of the requirement before the noncompliance.

As the Tenth Circuit has recognized, the Federal Rules of Civil Procedure have the "force of a federal statute."[14] Because there is no corresponding criminal rule, and the civil rules have the force of law, this Court may

---

[13] *United States v. Miller*, No. 06-40151-JAR, 2008 WL 2783146 at *2 (D.Kan. Jul. 15, 2008) (quoting *United States v. Morrison*, 521 F.Supp.2d 246, 251-52 (E.D.N.Y. 2007)).

[14] *Adamson v. Bowen*, 855 F.2d 668, 670 (10th Cir. 1988); *Sibbach v. Wilson & Co.*, 312 U.S. 1, 13 (1941); *Rumsey v. George E. Failing Co.*, 333 F.2d 960, 962 (10th Cir.1964).

regulate practice in a criminal case in any manner consistent with the civil rules.

The appointment of a special master is not only consistent with, but expressly provided for, in those Federal Rules of Civil Procedure. And, as the government concedes, those Rules may apply in a criminal case. So, contrary to the government's argument, the Federal Rules of Civil Procedure apply in a criminal case — including the civil rule authorizing the appointment of a special master.[15] And because, as the government once again confesses, sovereign immunity does not preclude assigning the cost of the special master to the government in a civil case, it does not preclude this Court's decision to assign costs to the government in this criminal case.[16] Rule 53 applies in full

---

[15] *Schwimmer v. United States*, 232 F.2d 855, 865 (8th Cir. 1956) (The "Court may, in its discretion, make appointment of a Master to assist in any of the incidents of a proceeding before it, whether civil or criminal, so long as there is no infringement upon the right of trial by jury or any prejudice to other substantive right."); *Ruiz v. Estelle*, 679 F.2d 1115, 116 n. 240 (5th Cir. 1982), *amended in part, vacated in part*, 688 F.2d 266 (5th Cir. 1982) (same); *Reed v. Cleveland Bd. of Educ.*, 607 F.2d 737, 746 (6th Cir. 1979) (noting that the authority to appoint "expert advisors or consultants" derives from either Rule 53 or the court's inherent power.)

[16] The government's citation of *United States v. Horn,* 29 F.3d 754 (1st Cir. 1998) is unhelpful. *Horn* considered only costs assessed under the district court's "inherent supervisory power". *Id.* at 758-759. Here, the Court also ordered appointment of a special master under Fed. R. Civ. Pro. 53. D.E. 146 at 3. That our special master's appointment was ordered under Rule 53 distinguishes our case from *Horn* because, as the government concedes, federal courts may assess costs against the government in cases proceeding under Rule 53.

force here, and the government's concession that "the Court may apportion the costs of a special master under Rule 53 to the United States"[17] must apply in both civil and criminal cases.

### 2. The government's complaint that a special master will be expensive is unfounded, irrelevant, and a direct result of the government's conduct.

The government's parade of hypotheticals concerning the cost of the special master is not a reason for this Court to reconsider its appointment order. The Court has a duty to supervise the special master to "protect against unreasonable expense."[18] Embedded in the government's argument is the assumption that the special master will abuse the public fisc, and the Court will indulge that excess. The government's unfounded and speculative assumption is no reason for the Court to grant the government's motion to reconsider.

While the government makes much of how much the United States Attorney for the District of Kansas has been appropriated, its office is not an independently owned franchise of the Department of Justice. Its bills are

---

[17] D.E. 163 at 16.
[18] Fed. R. Civ. Pro. 53(a).

paid by the Department of Justice, which has requested a 2016 budget of 28.7 billion dollars.[19]

And it is the government's conduct that the special master was appointed to review.[20] We are confident that the special master will take care to avoid unnecessary expense, and the Court's review will aid in that effort. The government has cited no authority that a special master is unnecessary,[21] or that the bare fact a special master may be expensive is a reason to decline an appointment. The Court's order was correct, and the government identifies no clear error that merits reconsideration.

---

[19] https://www.justice.gov/sites/default/files/jmd/pages/attachments/2015/02/02/2016_budget_summary_pages_5-12.pdf

[20] Repeatedly, the government attempts to divert attention to CCA's misconduct, but it is the Kansas USAO, not the independent action of CCA, that is the focus of the inquiry. D.E. 118 at 145-6.

[21] Rather, the government repeatedly agreed to the appointment of a special master in the almost precise terms the Court used to govern the appointment. D.E. 104 at 15:19-21 ("We agree that a special master should be appointed to review those items and determine whether or not they contain attorney-client privileged material . . ."); D.E. 110 at 10-11 ("The government requests that the Court appoint a Special Master…The Special Master should review the DVRs in order to determine what is on the video recordings in the CCA interview rooms designated as 'attorney room,' whether any interaction is depicted that constitutes attorney-client privileged communication, and if a recorded contact is determined to be privileged, which inmate is involved and whether any exception to the privilege exists." (internal numbering omitted); D.E. 135 at 148:24- 149:4 ("We consent to having a special master look at the recordings that have been provided to the Court and excise out the material that shows contacts with counsel, either through the phones or through the attorney-client interview rooms at CCA.")

Moreover, the government's argument is premature because it has yet to be taxed anything near the amount it estimates. To date, the government has only been assessed $40,240.60 — a far cry from its speculative estimates.[22] Instead, its complaint rests on hypothetical costs that it *might* have to bear. The Constitution forbids the Court from ruling on such phantom issues because it would constitute an advisory opinion.[23] In the words of the Tenth Circuit, "[i]t is fundamental that federal courts do not render advisory opinions and that they are limited to deciding issues in actual cases or controversies."[24] A "dispute of a hypothetical character" is not an actual case or controversy, so a ruling based on hypothetical facts constitutes an advisory opinion.[25] Here, the government's objection does not rest on *actual* costs it *has been assessed*, but *hypothetical* costs it *might be assessed*. Thus, it represents exactly the kind of abstract dispute that courts are forbidden from passing on.

---

[22] Ord. (D.E. 173. Nov. 14, 2016).
[23] U.S. Const. art. 3, s 1 *et seq*.
[24] *Norvell v. Sangre de Cristo Development Co., Inc.*, 519 F.2d 370, 375 (10th Cir. 1975) (citations omitted).
[25] *Id*.

Respectfully submitted,

s/ Melody Brannon
MELODY BRANNON #17612
Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
E-mail Address: Melody_Brannon@fd.org

s/ Kirk C. Redmond
KIRK C. REDMOND #18914
First Assistant Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
E-mail Address: Kirk_Redmond@fd.org

s/ Branden A. Bell
BRANDEN A. BELL #22618
Assistant Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
E-mail Address: Branden_Bell@fd.org

...

## **CERTIFICATE OF SERVICE**

    I hereby certify that on November 14, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

    David R. Cohen
    David R. Cohen Co., LPA
    Special Master
    david@specialmaster.biz

    Donald Christopher Oakley
    Assistant United States Attorney
    Office of the United States Attorney – Kansas City
    chris.oakley@usdoj.gov

    Debra L. Barnett
    Criminal Chief
    Assistant United States Attorney
    Office of the United States Attorney – Wichita
    debra.barnett@usdoj.gov

    Duston J. Slinkard
    Assistant United States Attorney
    Office of the United States Attorney- Topeka
    duston.slinkard@usdoj.gov

    John Jenab
    Jenab Law Firm, PA
    john.jenab@gmail.com

    David J. Guastello
    The Guastello Law Firm, LLC
    david@guastellolaw.com

    Jason P. Hoffman
    Hoffman & Hoffman
    jphoffman@sbcglobal.net

Kathleen A. Ambrosio
Ambrosio & Ambrosio Chtd.
kaambrosio@yahoo.com

Michael M. Jackson
jacksonmm@aol.com

Cynthia M. Dodge
Cynthia M. Dodge, LLC
cindy@cdodgelaw.com

Shazzie Naseem
Berkowitz Oliver LLP - KCMO
snaseem@berkowitzoliver.com

Erin C. Thompson
Foland, Wickens, Eisfelder, Roper, Hofer, PC
ethompson@fwpclaw.com

Jacquelyn E. Rokusek
Rokusek Law, LLC
rokuseklawoffice@yahoo.com

Jonathan L. Laurans
jlaurans@msn.com

Melanie S. Morgan
Morgan Pilate LLC
mmorgan@morganpilate.com

                                                  s/ Melody Brannon
                                                  Melody Brannon