```
 1                    UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF KANSAS
 2

 3   UNITED STATES OF AMERICA,      Docket No. 16-20032-01-JAR

 4       Plaintiff,                 Kansas City, Kansas
                                    Date:  03/13/2017
 5   v.

 6   LORENZO BLACK,

 7       Defendant.
     ....................
 8

 9                        TRANSCRIPT OF
                    CHANGE OF PLEA HEARING
10          BEFORE THE HONORABLE JULIE A. ROBINSON
                 UNITED STATES DISTRICT JUDGE
11
     APPEARANCES:
12   For the Plaintiff:   Mr. D. Christopher Oakley
                          United States Attorney's Office
13                        360 U.S. Courthouse
                          500 State Avenue
14                        Kansas City, Kansas 66101

15   For the Defendant:   Mr. John Jenab
                          Jenab Law Firm, P.A.
16                        7431 Broadway
                          # 9
17                        Kansas City, Missouri 64114

18   Court Reporter:      Kelli Stewart, RPR, CRR, RMR
                          Official Court Reporter
19                        259 U.S. Courthouse
                          500 State Avenue
20                        Kansas City, Kansas 66101

21

22

23

24

25
```

16-20032-01-JAR     USA v. Lorenzo Black     03.13.17     2

```
1                    (1:59 p.m., proceedings commenced).

2          THE COURT:  All right.  We're here in United

3   States versus Lorenzo Black.  The case number is

4   16-20032.  Your appearances, please.

5          MR. OAKLEY:  May it please the Court.  The

6   United States appears by Chris Oakley.

7          MR. JENAB:  And, Your Honor, Mr. Black is

8   present with counsel, John Jenab.

9          THE COURT:  All right.  We're here for a

10  change of plea.  So, Mr. Black, if you'll stand and

11  raise your right hand.

12                    (Defendant sworn).

13         THE COURT:  So this plea is to a superseding

14  information; is that correct?

15         MR. OAKLEY:  No, Your Honor.  It's to the

16  original indictment.  I apologize, Your Honor, I think

17  we sent a copy of a plea agreement that stated that, but

18  he's pleading to Count 9 of the indictment.

19         THE COURT:  Okay.  I'm not-- well, I must

20  have an old copy unless that's the only-- maybe that was

21  just something I can interlineate.  Count 9.

22         MR. OAKLEY:  Your Honor, I think we did--

23  and we did send that, but it's been corrected in the

24  copy that's been signed.

25         THE COURT:  Okay.  All right.  And did I
```

1   have you state your appearances?  I think I did.

2                MR. JENAB:  Yes, you did.

3                THE COURT:  Okay.  All right.  All right.

4   Mr. Black, let's start by having you tell me your full

5   legal name.

6                THE DEFENDANT:  Lorenzo Dwayne Black.

7                THE COURT:  And your age?

8                THE DEFENDANT:  42.

9                THE COURT:  And how many years of education

10  have you had?

11               THE DEFENDANT:  12.

12               THE COURT:  High school graduate?

13               THE DEFENDANT:  Yes.

14               THE COURT:  All right.  Have you ever been

15  diagnosed with or treated for a mental illness?

16               THE DEFENDANT:  No.

17               THE COURT:  Ever been diagnosed or treated

18  for substance or alcohol abuse or addiction?

19               THE DEFENDANT:  No, Your Honor.

20               THE COURT:  Today are you under the

21  influence of any drug, medication, or alcoholic

22  beverage?

23               THE DEFENDANT:  No, Your Honor.

24               THE COURT:  Have you been provided with a

25  copy of the charges against you in this case in the

1    indictment?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  And have you gone over the

4    charges with your lawyer, Mr. Jenab?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  And do you understand what

7    you're charged with?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Have you and Mr. Jenab also

10   discussed-- reviewed and discussed the evidence that the

11   government has against you in this case?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Did Mr. Jenab advise you that

14   you have a right to a jury trial?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  All right.  I'll go over that

17   with you in a little bit more detail.  Did he also

18   discuss with you the sentencing process, sentencing

19   guidelines and a sentencing statute?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Okay.  Also I'll review that

22   with you in more detail here in a minute.  Did the two

23   of you go over the plea agreement between you and the

24   government?

25             THE DEFENDANT:  Yes, Your Honor.

```
 1              THE COURT:  And there's another document

 2    that will be filed today called a petition to enter

 3    plea.  Did you and Mr. Jenab also review that?

 4              THE DEFENDANT:  Yes, Your Honor.

 5              THE COURT:  Do you understand the terms of

 6    your plea agreement?

 7              THE DEFENDANT:  Yes, Your Honor.

 8              THE COURT:  All right.  Are you satisfied

 9    with the advice and representation that you've received

10    from Mr. Jenab in this case?

11              THE DEFENDANT:  Yes, Your Honor.

12              THE COURT:  I have a copy of your plea

13    agreement with the government.  It appears to be 11

14    pages long, including the signature lines.  Does the

15    plea agreement cover all of the promises, agreements,

16    and assurances that have been made to you?

17              THE DEFENDANT:  Yes, Your Honor.

18              THE COURT:  And who made the decision for

19    you to enter into this plea agreement with the

20    government?

21              THE DEFENDANT:  Me, Your Honor.

22              THE COURT:  Did anyone pressure, threaten,

23    or coerce you to make that decision?

24              THE DEFENDANT:  No, Your Honor.

25              THE COURT:  Would it be fair to say you made
```

1    the decision voluntarily and of your own free will?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  All right.  Mr. Oakley, will you

4    summarize the key terms of the plea agreement.

5              MR. OAKLEY:  Yes, Your Honor.  Under the

6    terms of the written plea agreement, the defendant

7    agrees to plead guilty to Count 9 which charges bribery

8    in violation of 18 United States Code, Section

9    666(a)(2).  He acknowledges that he understands that the

10   maximum sentence which may be imposed for Count 9 is not

11   more than ten years of imprisonment, a $250,000 fine,

12   three years of supervised release, and a $100 mandatory

13   special assessment.

14             The parties agree in the plea agreement to

15   request that the Court apply the sentencing guidelines

16   to calculate the applicable sentence and to impose a

17   sentence consistent with the guidelines.  The defendant

18   acknowledges that he understands that because the Court

19   will be considering the sentencing guidelines, that the

20   Court will also consider relevant conduct at the time of

21   sentencing.

22             In return for the defendant's guilty plea,

23   the United States agrees to dismiss the remaining counts

24   of the indictment at the time of sentencing, to not file

25   any additional charges against the defendant arising out

1    of the facts forming the basis for the present

2    indictment, to recommend a sentence at the low end of

3    the applicable guideline range, and to also recommend

4    that the sentence run concurrently to the defendant's

5    sentence in Douglas County, Kansas District Court for a

6    parole violation that's based upon his conduct in the

7    instant offense, to recommend that the defendant receive

8    the maximum points available for acceptance of

9    responsibility.

10           And in the event that the United States

11   requests that the Court consider reducing his sentence

12   for substantial assistance, to allow the defendant to

13   argue for a greater reduction for that substantial

14   assistance than the United States recommends and to

15   allow the defendant to request for a departure and/or

16   variance as well.

17           The defendant agrees to cooperate fully and

18   truthfully with the United States.  Specifically he

19   agrees to provide truthful, complete, and accurate

20   information and testimony in the trial of this matter

21   before any grand jury proceeding or in any related

22   hearing and to provide all information concerning his

23   knowledge of and participation in the offenses charged

24   in the indictment and all related conduct.

25           The defendant acknowledges that he has not

1  yet provided substantial assistance as that term is used

2  within the sentencing guidelines and the statute.  He

3  acknowledges and understands that the determination as

4  to whether or not he has provided substantial assistance

5  and, therefore, whether or not a motion will be filed

6  pursuant to Sentencing Guidelines 5K1.1 is left entirely

7  and exclusively within the discretion of the United

8  States.

9          The United States-- if the United States

10  does make a determination that he has provided

11  substantial assistance, the United States shall request

12  that the Court consider reducing the sentence he would

13  otherwise receive under the applicable statutes and/or

14  sentencing guidelines.

15          The defendant acknowledges that he

16  understands that the sentence to be imposed will be

17  determined solely by Your Honor, and that the United

18  States cannot and has not made any promise or

19  representation as to what sentence he will receive.

20          The defendant voluntarily agrees and

21  consents to the forfeiture of certain property,

22  including $2,790 in cash and a silver 2000 Ford Dodge

23  Neon.  Those-- the current indictment does not allege a

24  forfeiture allegation, however, the defendant agrees to

25  consent to forfeiture in any civil or administrative

1    hearing related to that property.  He agrees to

2    cooperate fully with the United States as it relates to

3    the forfeiture and also the repayment of the special

4    assessment.

5           The defendant acknowledges in the plea

6    agreement that he understands that if the Court does

7    accept this plea agreement but imposes a sentence with

8    which he does not agree, he will not be permitted to

9    withdraw his guilty plea.

10          In Paragraph 13 beginning on Page 8 of the

11   plea agreement, the defendant knowingly and voluntarily

12   waives any right to appeal or collaterally attack any

13   matter in connection with this prosecution, his

14   conviction, or the components of the sentence to be

15   imposed, including the length and conditions of

16   supervised release, as well as any sentence imposed upon

17   a revocation of supervised release.

18          He acknowledges in the plea agreement that

19   he understands that normally he would have the right to

20   appeal or collaterally attack his sentence, but as

21   consideration of the plea agreement, he is voluntarily

22   and knowingly giving up those rights.

23          The parties do acknowledge that the

24   defendant is not waiving any subsequent claims with

25   regards to ineffective assistance of counsel or

1  prosecutorial misconduct.

2          The defendant acknowledges in the plea

3  agreement that he understands that the-- the United

4  States will provide to the Court and to the probation

5  office all information it deems relevant to determining

6  the appropriate sentence in this case.  He acknowledges

7  that he understands that this plea agreement binds only

8  himself and the United States Attorney for the District

9  of Kansas and it does not bind any other federal, state,

10  or local prosecution authority.

11          And finally, Your Honor, he acknowledges

12  that he's had sufficient time to discuss this case, the

13  evidence, and this agreement with his attorney, that

14  he's satisfied with the advice and representation that

15  he's been given, and that the written plea agreement

16  contains all of the parties' promises.

17          THE COURT:  All right.  Thank you, Mr.

18  Oakley.

19          Mr. Black, was there anything that the

20  prosecutor just said about your plea agreement that you

21  disagree with or that you do not understand?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  All right.  As Mr. Oakley

24  mentioned, in Paragraph No. 3 of your plea agreement you

25  are agreeing to give up most of your rights of appeal

1  and most of your rights to bring post-sentence

2  challenges to the conviction and sentence.

3            Paragraph No. 13 does spell out some limited

4  rights of appeal that you'll otherwise-- that you'll

5  still have.  But otherwise, you're giving up all other

6  rights of appeal.  Do you understand that?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  Now, the plea agreement includes

9  certain agreements between you and the government about

10  recommendations that will be made to me regarding your

11  sentence.  But understand, Mr. Black, that I don't have

12  to follow any such recommendations.  And if I don't,

13  that does not mean you will have the right to withdraw

14  your plea.  Do you understand that as well?

15            THE DEFENDANT:  I understand, Your Honor.

16            THE COURT:  By pleading guilty, you're

17  waiving your right to a jury trial.  There will not be a

18  jury trial once I accept the plea of guilty today.  If

19  you did not plead guilty, what would happen is the case

20  would proceed to a jury trial, you would continue to be

21  represented by your lawyer.  Whether or not you had

22  money for attorney's fees or trial expenses, all of that

23  would be reimbursed, all of that would be paid for.

24            The case would be tried to a jury of 12

25  people.  Those jurors could not convict you unless they

 1   were able to reach a unanimous verdict of guilty.  And

 2   to reach a verdict of guilty, the jury would have to be

 3   convinced the government at trial had presented

 4   sufficient evidence to prove your guilt beyond a

 5   reasonable doubt.  Beyond a reasonable doubt is actually

 6   the legal burden or legal standard the government must

 7   meet any criminal case.

 8            In contrast to that, if the case went

 9   forward to trial, you would have no burden of proof.  In

10   fact, you're presumed to be innocent of the charges,

11   which means at trial you don't have to do anything to

12   prove your innocence.  There's no responsibility by-- by

13   an accused person at trial to present evidence and

14   there's no expectation that they will.  And the jury is

15   instructed about that.  They're instructed about the

16   presumption of innocence.  They are told that it would

17   violate their oath to even consider the fact, for

18   example, that a defendant didn't testify, because it's

19   not the defendant's job to prove anything.  It's always

20   the government's full responsibility to do that.

21            At trial you would also have the right to

22   confront and cross examine the government's witnesses.

23   You'd have the right to present a defense also if you

24   wanted to.  But again, no obligation to do that.  And

25   whether or not you presented a defense, you could

1    confront and cross examine the government's witnesses

2    and perhaps in that way to point out doubt in the

3    evidence.

4              So that's all of the rights that are

5    included when we speak about a right to a jury trial.

6    But again, you're giving that up once you plead guilty

7    to Count 9 of the indictment.  Understood?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Okay.  Count 9 is a felony

10   crime.  A felony is simply defined as any crime for

11   which there is the potential of more than one year of

12   prison.  And this statute has a maximum penalty of ten

13   years.  So, of course, there's the potential of more

14   than one year in prison.

15             The importance of a felony crime is there

16   are certain civil rights you will lose once you're

17   convicted of any felony crime, including Count 9.  You

18   lose the right to vote, you lose the right to serve on a

19   jury, lose the right to serve in certain public offices,

20   you lose the right to purchase or possess a firearm,

21   dangerous weapon, ammunition.  And then if you're not an

22   American citizen, there are also deportation

23   consequences.  Do you understand that as well?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  All right.  And then, of course,

1    there are potential sentencing consequences.  The

2    important thing to understand, Mr. Black, is that

3    sentencing is a very complicated process.  It involves

4    me considering and applying sentencing guidelines and

5    also factors under a sentencing statute.  I have to

6    determine, for example, which guidelines apply to you in

7    your situation, which ones do not.

8              The guidelines aren't mandatory but they

9    help guide the judge's decision-making.  Sometimes there

10   are legal issues or factual issues I have to resolve.

11   And there are dozens and dozens of guidelines, as well

12   as other factors to take into consideration.

13             The most significant guidelines are--

14   there's a guideline for this crime.  Every federal crime

15   has its own guideline.  There's a guideline called the

16   criminal history guideline and a guideline called the

17   relevant conduct guideline.  Those three guidelines

18   typically have the most significant effect on the

19   recommended sentence under the guidelines.

20             The criminal history guideline, for example,

21   has me calculate a score based on your number of prior

22   convictions.  The fewer the convictions, the lower the

23   score, the-- the shorter the sentence very

24   simplistically.

25             The guideline for the crime itself or this

1    particular type of crime has me consider a number of

2    factors about the offense itself, including how much

3    money was involved in this offense.  Other factors as

4    well.

5            The guideline for the relevant conduct has

6    the judge consider not just what you're pleading guilty

7    to, but all other related and relevant criminal conduct.

8    That might be other counts in the indictment, it may not

9    even be charged in the indictment.  But if it's related

10   and relevant, I factor it in.  Because the point is to

11   base a sentence on the big picture of what someone did,

12   not just the piece of it they may be pleading guilty to.

13           I also consider a number of factors under a

14   sentencing statute that are specific to you.  So I'll be

15   considering all of your past history and your present

16   circumstances.  Everything from your family situation to

17   your health, your employment, your education, all of

18   that is taken into consideration too.

19           So importantly, your lawyer, the prosecutor,

20   nor I, none of us can tell you with any certainty right

21   now what your sentence will be until we go through the

22   entire sentencing process.  Do you understand that?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  All right.  And I know your plea

25   agreement at least has the possibility of you getting

1   some relief for substantial assistance.  But as Mr.

2   Oakley mentioned when he was reviewing the plea

3   agreement, whether or not you provide substantial

4   assistance is something that the government and the

5   government only evaluates.

6           So when someone cooperates with the

7   government, it's ultimately only up to the government

8   was their cooperation enough to qualify for a motion for

9   substantial assistance.  I can't force them to file the

10  motion, nor can you.  And if the government doesn't file

11  the motion, then I have no authority to sentence below,

12  for example, a mandatory minimum sentence.

13          I do have other authority if there's not a

14  mandatory minimum to sentence below the guidelines

15  because the guidelines are only advisory.  But to get a

16  significant reduction at least sponsored by the

17  government requires cooperation and a motion by the

18  government.  Do you understand that?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  The mandatory penalties in this

21  case - we can tell you with certainty your sentence

22  won't exceed those because obviously those are the

23  mandatory - are ten years in prison, a $250,000 fine,

24  three years of supervised release after any prison

25  sentence, and a $100 Crime Victims Fund assessment.  Do

1    you understand that as well?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  All right.  If you receive a

4    prison sentence in the federal system, Mr. Black, then

5    that's the amount of time you can expect to serve.  So

6    in this case, if you were to receive the maximum

7    sentence of ten years, it would mean you'd actually

8    serve ten years.  We don't have parole boards or parole

9    commissions.  If you received a five-year sentence,

10   you'd serve five years, et cetera.  Do you understand

11   that as well?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  All right.  Mr. Oakley, will you

14   tell us the factual basis for Mr. Black's plea to

15   Count 9?

16             MR. OAKLEY:  Yes, Your Honor.  CoreCivic,

17   which was formally known as Corrections Corporation of

18   America, or CCA, is a private publicly-traded

19   corporation.  CCA operates private detention facilities

20   in the United States contracting with government

21   entities.

22             CCA operates a detention facility in

23   Leavenworth, Kansas.  CCA-Leavenworth houses inmates

24   pursuant to a contract with the Attorney General of the

25   United States through the United States Marshals Service

1    and, therefore, CCA-Leavenworth is a prison as defined

2    by Title 18, United States Code, Section 1791.  CCA

3    received benefits in excess of $10,000 pursuant to a

4    federal program contract during the one year beginning

5    April 15, 2015, and ending April 15, 2016.

6              Karl Carter was an inmate of

7    CCA-Leavenworth.  And Anthon Aiono was an agent of CCA,

8    having served as a correctional officer at the

9    CCA-Leavenworth facility.

10              Alcohol, controlled substances, synthetic

11    cannabis, pornography, and tobacco were all prohibited

12    objects at CCA-Leavenworth.  CCA does not allow inmates

13    to possess cash or currency of any kind within the

14    facility.  Instead, each inmate is allotted an inmate

15    account into which funds can be deposited for the inmate

16    to purchase items such as toiletries, food items, or

17    magazines.

18              Anthon Aiono agreed to bring contraband,

19    including tobacco and synthetic marijuana, into

20    CCA-Leavenworth in exchange for receiving money.  The

21    defendant, Lorenzo Black, met with Aiono to provide him

22    with the contraband and with bribery payments.

23              On April 8th, 2016, law enforcement agents

24    were conducting surveillance when they observed a

25    meeting between the defendant, Lorenzo Black, and Aiono

1    at Black's residence in Kansas City, Missouri.  Agents

2    observed the defendant leave his residence and enter the

3    right front passenger's seat of Aiono's vehicle.

4    Shorter thereafter, the defendant left Aiono's vehicle

5    and entered a separate vehicle.  Both the defendant and

6    Aiono drove away, where they were each stopped by law

7    enforcement officers.

8              Both vehicles were searched, leading to the

9    recovery of approximately $2,000 in United States

10   currency and an unknown substance from the defendant's

11   vehicle which later field-tested positive as

12   methamphetamine.  Investigators subsequently took the

13   defendant and Aiono into custody.

14             Aiono told law enforcement agents that

15   $1,000 of the recovered currency represented payment for

16   a prior delivery of contraband to inmates at CCA's

17   facility in Leavenworth, Kansas, where he is employed as

18   a correctional officer.  Aiono further stated the

19   remaining $1,000 of currency represented payment for a

20   pending delivery of contraband to CCA-Leavenworth.

21   Aiono received more than $5,000 in bribery payments in

22   exchange for introducing contraband into the facility.

23             And, Your Honor, that would be the

24   government's evidence.

25             THE COURT:  All right.  Mr. Black, was-- do

1    you-- two questions I guess.  Do you agree that the

2    government has the evidence as described by Mr. Oakley?

3                    THE DEFENDANT:  Yes, Your Honor.

4                    THE COURT:  And did you, in fact, do what

5    you're charged with in Count 9, which charges that about

6    September 2015 until about April 2016, here in Kansas,

7    that you, Karl Carter, Alicia Tackett, Catherine

8    Rowlette, and David Bishop either corruptly gave,

9    offered, or agreed to give a thing of value of $5,000 or

10   more to a person intending to influence and reward the

11   operations of CCA in connection with a transaction and

12   series of CCA [sic].  And at that time CCA was an

13   organization that received federal assistance, more than

14   $10,000 during April 2015 to April 2016.  And at that

15   time Anthon Aiono was an agent of CCA, in fact he was a

16   correctional officer at their facility in Leavenworth.

17                    Did you, in fact, do what you are charged

18   with in Count 9?

19                    THE DEFENDANT:  Yes, Your Honor.

20                    THE COURT:  All right.  Mr. Jenab, if you

21   and Mr. Black are ready, you can sign the petition to

22   enter plea.

23        (Defendant executed the document in open court)

24                    MR. JENAB:  Thank you, Judge, we have.

25                    THE COURT:  All right.  Mr. Black, if you'll

1    stand and raise your right hand, we'll acknowledge your

2    signature on the petition.

3                    (Defendant sworn).

4            THE COURT:  All right.  You can remain

5    standing.  Mr. Jenab and Mr. Oakley, do you know of any

6    reason why I should not take Mr. Black's plea at this

7    time?

8            MR. OAKLEY:  No, Your Honor.

9            MR. JENAB:  No, Your Honor.

10           THE COURT:  Mr. Black, would you like me to

11   read aloud to you here in court Count 9 of the

12   indictment or do you waive the reading of the

13   indictment?

14           THE DEFENDANT:  No, Your Honor.

15           THE COURT:  How do you plead to Count 9 of

16   the indictment?

17           THE DEFENDANT:  Guilty, Your Honor.

18           THE COURT:  All right.  You can be seated.

19   The Court is satisfied and finds that the defendant,

20   Lorenzo Black, is mentally competent at today's hearing

21   and was at the time of the commission of the offense.

22   The Court finds that Mr. Black enters his plea on an

23   informed basis.  He's had the advice and representation

24   of experienced and competent counsel in Mr. Jenab.

25           Supplemented by my conversation with Mr.

1   Black this afternoon, I am satisfied that he is aware of

2   the charges, the factual and evidentiary basis for the

3   charges, his right to a jury trial, and the potential

4   civil rights and sentencing consequences of pleading

5   guilty to this charge.

6           I find the plea is knowingly and voluntarily

7   made.  I find it is supported by an independent basis in

8   fact containing each of the essential elements of the

9   offense.  So the plea is accepted.  Mr. Black is

10  adjudged guilty of Count 9 of the indictment.

11          I'll order a presentence report, and we'll

12  schedule sentencing for May 30th at 9-- or I'm sorry, at

13  1:30 p.m.  That is the day after Memorial Day, so does

14  that work with you all's schedule?

15          MR. OAKLEY:  It does for me, Your Honor.

16          MR. JENAB:  Yes, Judge.  Thank you.

17          THE COURT:  Okay.  Mr. Jenab, do you have

18  the petition and the plea agreement?

19          MR. JENAB:  I do, Your Honor.

20          THE COURT:  Okay.  I'll sign that.  So I'll

21  order a presentence report.  We'll schedule sentencing

22  for May 30th at 1:30 p.m.

23          Mr. Jenab, there are some pending motions.

24  There's a motion, Document 82, and an amended motion,

25  Document 85, which both pray for Rule 41(g) relief.  And

1    there's Document 202, motion to compel production of

2    grand jury materials.  What's the status of these

3    motions?

4              MR. JENAB:  Judge, at this time I think that

5    we're going to withdraw those motions.  Of course, at

6    the time that the defendant enters a plea, the potential

7    motions like motions to suppress are-- are waived.  And

8    so at this time, Judge, we're-- we're not pursuing those

9    motions.

10             THE COURT:  All right.  I'll show then

11   Documents 82, 85, and 202, those motions are withdrawn.

12   And we'll condition-- we'll continue conditions of

13   release pending sentencing.

14             MR. JENAB:  Thank you, Judge.

15             THE COURT:  All right.  Thank you.  All

16   right.  The next case we'll call is Tackett.

17             (2:24 p.m., proceedings recessed).

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E
 2
 3
 4        I, Kelli Stewart, a Certified Shorthand Reporter and
 5    the regularly appointed, qualified and acting official
 6    reporter of the United States District Court for the
 7    District of Kansas, do hereby certify that as such
 8    official reporter, I was present at and reported in
 9    machine shorthand the above and foregoing proceedings.
10        I further certify that the foregoing transcript,
11    consisting of 23 pages, is a full, true, and correct
12    reproduction of my shorthand notes as reflected by this
13    transcript.
14        SIGNED March 24, 2017.
15
16
17
18        /s/ Kelli Stewart
                _____
19            Kelli Stewart, CSR, RPR, CCR, RMR
20
21
22
23
24
25
```