May 23, 2017


The Honorable Julie A. Robinson
United States District Court Judge
500 State Avenue
Kansas City, KS  66101

Dear Judge Robinson:

In *United States v. Black et al.*, case number 16-20032-JAR, the Court recently found the government made a number of inaccurate, misleading or incomplete statements.  (Doc. 253.)  In response, I reviewed the transcript from the September 7, 2016 hearing, and I respectfully request to supplement the record:

During the hearing, the Court asked: "In the past, has the U.S. Attorney's Office used attorney-client recordings in any other cases, to your knowledge?"  I responded that, for my part, another AUSA and I subpoenaed attorney calls in an unrelated case.  I explained that those calls were provided to a taint team for review.  (Transcript Sept. 7, 2016 Hrg., at 52.)  While the information is accurate, I now seek to supplement that prior record as follows:

Prior to submitting the calls to a taint team for substantive review, I attempted to review the calls, without obtaining substance, to locate the voice of an inmate who was not represented by that particular attorney.  I did not intend to obtain any content from the attorney-client communications.  To avoid obtaining content, I used a mechanism that is mandated under the wiretap statute called "minimization."  *See* 18 U.S.C. 2518(5).  After initiating the procedure, I recognized the inefficiency of this method because I could not listen to enough of each call to find the correct voice without gaining content, so I suspended the process.  I did not believe I was violating any law or substantive right or committing any unethical act as, at the time, (1) I believed the law was clear the inmate calls were not privileged, (2) I used a method approved for privileged calls in the wiretap context, (3) I did not gain content from the calls, and (4) by extension, I did not use any content of the calls to gain a tactical advantage in the case.

Shortly thereafter, I discussed my decision regarding handling of the calls with two AUSAs, one who was assigned to the case at issue.  As the inmate calls increasingly became an issue in the *Black* litigation, I began to second-guess my decision.  I again discussed the matter with an AUSA assigned to the case at issue.  He stated that I did not have an obligation to bring this matter to the attention of my supervisor because I had not violated any law, substantive right, or ethical rule.  Even so, later the same day, May 10, 2017, I informed my direct supervisor of my handling of the inmate calls in the case.



After the Court's order in *Black* on May 17, 2017, I reviewed the transcript from the September 7, 2016 hearing in *Black* in an attempt to identify what the Court considers inaccurate, incomplete, or misleading information. Based on my review, I believe it is prudent that I supplement the record as set forth above. I am willing to provide additional information to the Special Master.

In addition, at the conclusion of the September 7, 2016, hearing, the Court made a lengthy record regarding my accessing the Court's chambers, with the accompaniment of a U.S. Marshal. Based on the record, it appeared the Court was concerned I accessed her chambers for nefarious reasons. Subsequently, several media outlets across the country issued stories suggesting that I may have accessed the Court's chambers to steal evidence. On March 16, 2017, the Special Master issued a report, requesting permission, in part, to authorize further investigation into the circumstances surrounding the after-hours entry into the Court's chambers by a member of the OUSA. The Court did not authorize the additional investigation. I respectfully request that the Court authorize the investigation because I believe it will show (1) I sought guidance from upper management of the U.S. Attorney's regarding additional evidence that may be subject to the Court's impound order well before close of business; (2) Upper management, including First Assistant Emily Metzger and Criminal Chief Debra Barnett, deliberated at length whether the evidence should be provided to the Court, but did not make a decision until after close of business; (3) Upper management directed me to provide the additional evidence to the Court by sliding the documents under the Court's chamber door; (4) The plan was conceived by management, and I was simply following direction, and (5) Management contacted the U.S. Marshals Service and asked a Deputy U.S. Marshal to escort me to chambers, a procedure which was approved by AUSA Barnett.

After the Court's admonishment on September 7, 2016, several AUSAs contacted USA Tom Beall and asked him to correct the record and make it clear that I did not conceive of the plan to enter chambers after hours, and was only placed in that position because I was following management's direction. AUSA Tris Hunt and AUSA Dave Zabel, in writing, cautioned USA Beall that he had a duty of candor to the Court to correct the record. Notwithstanding these efforts, USA Beall refused to correct the record. For all these reasons, I respectfully request the Court authorize the Special Master to investigate the after-hours entry into chambers.

Respectfully,


s/ Erin S. Tomasic
Erin S. Tomasic