1               UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS
2

3  UNITED STATES OF AMERICA,

4       Plaintiff,

5  v.                              Docket No. 16-20032-JAR

6  LORENZO BLACK                   Kansas City, Kansas
   KARL CARTER,                    Date:  07/17/2018
7  ANTHON AIONO,

8       Defendants.
   . . . . . . . . . . . . . . . . . .
9

10                    TRANSCRIPT OF
                    STATUS CONFERENCE
11         BEFORE THE HONORABLE JULIE A. ROBINSON
              UNITED STATES DISTRICT JUDGE
12

13  APPEARANCES:

14  For the Government:  Mr. Steven D. Clymer
                         (Appeared telephonically)
15                       Department of Justice - USAO
                         Lrm Eckert, William
16                       100 S. Clinston Street, Suite 9000
                         Syracuse, New York 13261
17
                         Mr. Duston J. Slinkard
18                       Office of United States Attorney
                         444 Southeast Quincy, Suite 290
19                       Topeka, Kansas 66683-3592

20                       Mr. Stephen R. McAllister
                         (Appeared telephonically)
21                       Office of United States Attorney
                         500 State Avenue, Suite 360
22                       Kansas City, Kansas 66101

23  For the Defendant Lorenzo Black:
                         Mr. John Jenab
24                       Jenab Law Firm, P.A.
                         7431 Broadway, #9
25                       Kansas City, Missouri 64114

```
 1  APPEARANCES:

 2  (Continued)

 3  For the Defendant Karl Carter:
                    Mr. David J. Guastello
 4                  (Appeared telephonically)
                    The Guastello Law Firm, LLC
 5                  811 Grand Boulevard
                    Suite 101
 6                  Kansas City, Missouri 64106

 7  For the Defendant Anthon Aiono:
                    Mr. Jason P. Hoffman
 8                  (Appeared telephonically)
                    Hoffman & Hoffman
 9                  CoreFirst Bank & Trust Building
                    100 East Ninth Street
10                  Third Floor East
                    Topeka, Kansas 66612
11
    For the Movant Federal Public Defender:
12                  Ms. Melody J. Brannon
                    Mr. Kirk C. Redmond
13                  Office of Federal Public Defender
                    117 Southwest Sixth Street
14                  Suite 200
                    Topeka, Kansas 66603
15
    For the Special Master David R. Cohen:
16                  Mr. David R. Cohen
                    (Appeared telephonically)
17                  David R. Cohen Co., LPA
                    24400 Chagrin Boulevard
18                  Suite 300
                    Cleveland, Ohio 44122
19
                    Ms. Alleen VanBebber
20                  (Appeared telephonically)
                    VanBebber Law Firm, LLC
21                  2029 West 95th Street
                    Leawood, Kansas 66206

22
    ================================================================
23
          Kelli Stewart, CSR-KS, CRR-MO, RPR, CRR, RMR
24                    Official Court Reporter
           259 U.S. Courthouse, 500 State Avenue
25                Kansas City, Kansas 66101
```

1              (2:03 p.m., proceedings commenced).
2              THE COURT:  All right.  You can be seated.
3   All right.  We will go on the record in United States
4   versus Lorenzo Black, Karl Carter, Anthon Aiono.  The
5   case number is 16-20032.  And the appearances of those
6   in the courtroom are?
7              MR. SLINKARD:  Good afternoon, Your Honor.
8   The government appears by Duston Slinkard.  Also present
9   by telephone are U.S. Attorney Steve McAllister and
10  Special Attorney Steve Clymer.
11             THE COURT:  All right.  And appearing in the
12  courtroom also?
13             MS. BRANNON:  For the Federal Public
14  Defender, Melody Brannon and Kirk Redmond.
15             THE COURT:  All right. And then-- so we
16  have Mr. McAllister and Mr. Clymer on the line.
17             Mr. Jenab, are you there for Lorenzo Black?
18             MR. JENAB:  Yes, Your Honor.
19             THE COURT:  All right.  Mr. Guastello, are
20  you there for Karl Carter?
21             MR. GUASTELLO:  Yes, Your Honor.
22             THE COURT:  And, Mr. Hoffman, are you there
23  for Mr. Aiono?
24             MR. HOFFMAN:  Yes, Your Honor.
25             THE COURT:  And my understanding is that Mr.

1  Black, Mr. Carter and Mr. Aiono have all waived
2  appearance for today's hearing.  Correct?  Mr. Jenab?
3              MR. JENAB:  Yes, Your Honor.
4              THE COURT:  Mr. Guastello?
5              MR. GUASTELLO:  That's correct, Judge.  Yes.
6  Yes, Judge.
7              THE COURT:  And Mr. Hoffman?
8              MR. HOFFMAN:  Yes, Your Honor.
9              THE COURT:  And then also on the line, Mr.
10 Cohen, are you there?
11             SPECIAL MASTER COHEN:  I am, Judge.  Thank
12 you.
13             THE COURT:  And, Ms. VanBebber, are you
14 there?
15             MS. VANBEBBER:  Yes, Your Honor.
16             THE COURT:  Have I missed anyone who's on
17 the line who wants to enter an appearance?  All right.
18 I hear not.
19             So this is set for a status conference
20 today.  You all are going to report on where you're at
21 in your negotiations.  And, Mr. Slinkard or Ms. Brannon,
22 whoever wants to start.
23             MR. SLINKARD:  Your Honor, we have--
24 updating the Court from I believe at the time of the
25 last status conference, the parties have spoken

1  regarding some prospective relief and submitted a
2  proposed order to the Court.  We're re-visiting some of
3  the matters in that at the Court's direction to take
4  into account some of the points of view of the marshals
5  service.  And there have been some further negotiations
6  and conversations on that point.
7           With respect to retrospective relief, we've
8  really focused on dealing with those matters in the last
9  series of meetings.  We've met fairly continuously the
10 last couple of weeks and at this time have reached an
11 agreement in principle that we will be shortly able to
12 put before the Court.
13          We're still firming up exact numbers with
14 respect to-- we've identified a universe of just
15 approximately 100 defendants that would have been in
16 custody and had meetings in rooms that may have been
17 recorded during that time and we're working on some
18 other fronts, but we believe we're-- well, as I say,
19 we've reached an agreement in principle on how to handle
20 those and we believe that we'll be able to formulate
21 that into something more firm to present to the Court
22 fairly shortly.
23          THE COURT:  All right.  Ms. Brannon, is
24 there anything else you'd like to add?
25          MS. BRANNON:  Your Honor, just a couple of

1  things.  One of the things we're discussing is the
2  avenue that we would present to the Court, and we've
3  been discussing 2555s.  I think we have a universe of--
4  of clients that we would treat similarly and then there
5  would be a few that we have to consider individually for
6  whatever circumstances they have in their case.  We're
7  also dividing them between Kansas City and Topeka, so
8  that's some of the things that are--
9             MR. McALLISTER:  Your Honor, I don't want to
10 interrupt - excuse me, counsel - but I'm having a hard
11 time hearing Ms. Brannon, but I do hear typing in the
12 background.  So I'd like to be able to hear what she's
13 saying.
14            THE COURT:  Okay.  Would you start over, Ms.
15 Brannon?
16            MS. BRANNON:  Sure, I can repeat.  There are
17 a couple of other things we are talking about, the
18 avenue of relief that we will present to the Court by
19 agreement.  Right now we're talking about 2555s.  We
20 have, as Mr. Slinkard said, identified a group of about
21 100 people who were subject to the videotaping that was
22 produced for the government.
23            We are further looking at whether we can
24 deal with a group of those sort of like a class action
25 to apply a formula to their existing sentences.  And we

1  are only talking about people who are currently serving
2  sentences.
3          We also have further divided it between
4  Kansas City and Topeka, and there may be some
5  discrepancy about how those are treated, as well as we
6  acknowledge that there are some outlier cases that we
7  will have to treat and consider differently.
8          The other factor in this, Your Honor, is
9  that of this group there will be some-- we anticipate
10 there will be some clients that opt into this agreement.
11 There may be some that opt out.  There will also be some
12 that just by agreement we have not deemed eligible for
13 the terms of this agreement.
14         Those opt-outs and the other people who may
15 have claims will still be able to file independently,
16 they just won't receive the benefit of the agreement we
17 have with the government.  And hopefully the FPD can
18 work with those clients.
19         The other part of this, Your Honor, is we're
20 working and have been working with the clients affected
21 by the videotaping because it was fairly easy to
22 identify who that was.  We are working as well on the
23 clients who would be affected by the recording of phone
24 calls, and specifically we are looking at those who have
25 attorney-client calls that were recorded and requested

1  or obtained and in the United States Attorney's
2  possession.
3              Identifying that group is a bit more
4  difficult and cumbersome, but hopefully we can work with
5  the Special Master to come up with a system to identify
6  those and then work with the U.S. Attorney's Office to
7  see how we deal with that.  We've been assured that
8  there will be some parity between how the video clients
9  are handled and the phone call clients are handled.
10             So I-- I think that probably covers any of
11 the other issues that we have agreed on and what
12 direction we're going.
13             THE COURT:  All right.  On the phone, Mr.
14 McAllister, you're-- and Mr. Clymer, you're appearing by
15 phone, is there anything more that you'd like to add to
16 what Mr. Slinkard and Ms. Brannon have told me?
17             MR. CLYMER:  No, Your Honor.
18             MR. McALLISTER:  Your Honor, not-- not much
19 really.  I think one of the things that the Federal
20 Public Defender has done is very helpful, is they've
21 tried to pull together spreadsheets of the people
22 involved and affected, and it's going to take us a
23 little time just to go through all that.  And then I--
24 as Ms. Brannon mentioned, there may be individual cases,
25 in fact, that we talk about separately from a-- a

1  general agreement.
2           So, you know, this is not necessarily done
3  today, but the principle, the concept, a lot of the
4  parameters we have agreed upon.  And we're certainly not
5  trying to-- to delay or slow things, I'm just saying it
6  may take a little time to get through all of these
7  cases.
8           THE COURT:  I understand. Mr. Jenab, is
9  there anything that you'd like to weigh in on?
10          MR. JENAB:  No.  Thank you, Judge.
11          THE COURT:  How about you, Mr. Guastello?
12          MR. GUASTELLO:  No, Your Honor.
13          THE COURT:  And Mr. Hoffman?
14          MR. HOFFMAN:  No, ma'am.
15          THE COURT:  Mr. Cohen?
16          SPECIAL MASTER COHEN:  Thank you, Judge.
17  Unfortunately, I have to echo Mr. McAllister, some of it
18  was hard to hear.  I guess I just want to make sure that
19  I understand one thing, and that is that the-- the
20  extent to which the orders that the Federal Public
21  Defender and the United States Attorney's Office
22  together are going to submit to the Court, I couldn't
23  really tell whether those are actually kind of more or
24  less finalized and-- and whether that's something that
25  the Court wants me to look at.

1          THE COURT:  All right.  That's a good
2   question.  You all had I think submitted two proposed
3   standing orders a while back.  One prospective, one
4   retrospective.  And the one that would be prospective in
5   terms of-- no.  Well, I don't know if that's right, but
6   you had presented standing orders to me.  I had not done
7   anything with them because then I got some communication
8   that made me think that everything was still in play.
9          But then I will let you know that the
10  standing order that-- one of the standing orders which
11  had to do with appointment of the FPD to 2255 clients
12  unless there's a conflict has become a standing order,
13  Standing Order 18-3, today.  The entire court has signed
14  off on that.  So that one is operative, you can check
15  that one off the list.
16         But with respect to the other earlier
17  submissions, I assume I'm not to do anything with those
18  until I hear further from you; is that correct?
19         MS. BRANNON:  Judge, I think as far as the
20  prospective order, we have been waiting for some
21  information from general counsel and not received it
22  yet, so I suppose we-- we could wait for that.  We do--
23         THE COURT:  And is that the general counsel
24  of the U.S. Marshals Service?
25         MS. BRANNON:  Yes.

1                THE COURT:  Okay.
2                MS. BRANNON:  We do have and they were very
3    good to provide the actual agreements with the jails and
4    we also have an amendment in the contract with CCA.
5    There may be some provisions of that that we want to
6    bring to the Court's attention.  But beyond that, we--
7    the U.S. Attorney and the FPD have not changed anything
8    about our agreement.
9                THE COURT:  Okay.  Well, I will sit on those
10   until further notice and not enter anything,
11   particularly because it sounds like you're waiting on
12   general counsel to give feedback on-- upon review of
13   that.  So we can set another status conference whenever
14   you all are ready to take up anything else we need to
15   take up.
16               MS. BRANNON:  Judge, the other thing that
17   might be helpful, if the U.S. Attorney is in agreement,
18   we do have a draft spreadsheet that we could provide to
19   the Special Master if that would speed things along.  I
20   also spoke with the Trey Burton in probation to let him
21   know what's going on and told him we would try to
22   provide him a draft spreadsheet.
23               The thing is with the agreement we've
24   reached, it could-- if the Court accepts it, it could
25   result in the immediate release of certain people and so

1  obviously we need to work with probation on any--
2              THE COURT:  Wait a minute.  Somebody needs
3  to put their phone on mute because we're getting some
4  background noise.  Okay.  I'm sorry, go ahead.
5              MS. BRANNON:  I was saying that if the Court
6  accepts the-- the agreed dispositions, there may be some
7  people that are eligible for immediate release and,
8  therefore, we need to identify those and work with
9  probation on release plans and so forth.  Those are
10 things that we maybe can begin to work on.
11             I think the other question that may have
12 come up is if we have this series of agreed orders to
13 present to the Court, obviously there are a variety of
14 judges who had the cases originally and we didn't know
15 if it was going to be something where this Court could
16 address the agreed orders as-- sort of as a streamline
17 or if they would revert to the various judges.  I don't
18 believe there's anybody out of Wichita that's affected.
19             THE COURT:  That's a good question, I
20 haven't given that a lot of thought.  I think if it-- if
21 the settlement is going to require some individual
22 judicial decision-making, it makes sense for the cases
23 to stay with the assigned judges.  But if it doesn't
24 really require it, it's just a matter of you all have
25 reached an agreement and, you know, the judge-- judge

1  can adopt that, I'm fine with handling them or finding
2  somebody to handle all of them because it would be more
3  efficient I assume.
4              MS. BRANNON:  If it helps the Court at all,
5  the agreed orders that we are contemplating would have a
6  specific sentence that we would recommend to the Court,
7  a specific number.  It would not affect supervised
8  release or other aspects of the sentence, it would just
9  be who is currently serving a sentence and whether that
10 needs to be modified in some way.
11             THE COURT:  All right.  Well, given that,
12 I'm fine with either taking them myself or asking one of
13 my colleagues to take all of them.  It will take some
14 administrative work.  We'll have to transfer those cases
15 to one judge's name I suppose.  Maybe not, maybe we can
16 keep them under the original judge but one judge would
17 enter all the orders.  We'll figure that out.
18             MR. McALLISTER:  Your Honor, this is Steve
19 McAllister.  I mean, just to echo what Ms. Brannon is
20 saying, I think the people who in a sense opt out,
21 that's a different matter.  But those who would partake
22 of the agreement, it's going to be in terms of an
23 agreed-upon percentage which produces a single number.
24 And even the individual ones we may look at a little
25 differently, my expectation would be before it's

1  presented to the Court, the FPD and the U.S. Attorney's
2  Office would have agreed on a number.
3              THE COURT:  Okay.
4              MR. McALLISTER:  So that's the way they
5  would be presented, not asking the Court to make
6  findings or make a discretionary judgment of any kind.
7              THE COURT:  Okay.  All right.  So it sounds
8  to me like this is-- a single judge can manage this.  So
9  that's what-- the way we'll plan to proceed.  I'll
10 likely do that.  I think my colleagues would appreciate
11 that if I did.
12             Okay.  Okay.  Anyone else want to weigh in
13 on anything?  Mr. Cohen, did that answer the questions
14 you have?
15             SPECIAL MASTER COHEN:  I think so, Judge.
16 I'm sure that I'll end up talking with you and-- and
17 Steve and Melody in the future.
18             THE COURT:  Okay.  And it sounds like they
19 have, by agreement, more work for you to do in terms of
20 helping identify and fleshing out the spreadsheet
21 perhaps.
22             SPECIAL MASTER COHEN:  Which, of course, I'm
23 happy to do.
24             THE COURT:  Okay.  One note I wanted to
25 make.  We have Mr. Carter's trial, it's set for

1  August 13th.  So we're going to need to do something
2  with that if you think this won't be finalized by then.
3  What do you think is a reasonable time frame to at least
4  have another status conference or how long do you think
5  all of this will realistically take?
6              MR. SLINKARD:  Your Honor, I mean, with
7  respect to that particular case, there is the motion
8  that's pending under advisement from the Court on that
9  case.  So I think if we get close to that-- I don't
10 think that that time frame is unrealistic.  Certainly I
11 think we will have been back to the Court with updated
12 information before August 13th, whether or not we're at
13 conclusion or whether it's a further status update.
14             I guess the government would ask that-- that
15 you be subject to-- that you leave the matter subject to
16 call so that we can get in touch with you through Mr.
17 Cohen when we need-- have something meaningful to share
18 with the Court and we can address that at that time, but
19 we'll all be aware that we need to address the
20 circumstance of Mr. Carter's date before August 13th.
21             THE COURT:  All right.  So at this point I
22 won't-- Ms. Brannon, is there something you wanted to
23 say?
24             MS. BRANNON:  I'm sorry, I just had another
25 thought.  While the government is looking at the

1  spreadsheet on the videos, we will be working on the
2  phone records and trying to sort that out.  That may
3  require us to ask the Court for authorization for
4  certain subpoenas to either Securus or CoreCivic, and we
5  kind of need a hearing date I think for the purpose of
6  issuing those subpoenas, so if the Court even set
7  something maybe the first week of August so that we
8  could at least work with that.  If that has to be
9  moved--
10             THE COURT:  All right.
11             MS. BRANNON:  -- we can deal with that, but
12  we need a-- I think we need a date.
13             THE COURT:  Okay.  Let's see.  Why don't we
14  set the afternoon of August 1st, say 2:00.  That's a
15  Wednesday.  We can change that if need be, but that's
16  the hearing date you can put on the subpoenas.
17             Okay.  Anything else?
18             MR. SLINKARD:  Just so we're clear, Your
19  Honor, I think the record would reflect this, but that
20  date for August 1st would be a hearing date for any
21  matters that need to be heard related to the subpoenas
22  that the FPD needs to issue for-- we're not interpreting
23  that at this point to be a hearing where any of the
24  witnesses previously subpoenaed would need to appear
25  unless and until there was some specific update.  So

1  just so I can tell people that they don't need to
2  rearrange schedules, I want to make sure that's
3  acceptable to everyone.
4           THE COURT: That is correct. I'm not
5  setting August 1 as an evidentiary hearing for any
6  witness testimony, but I am setting it as a hearing for
7  purposes of any subpoenas. That would be the return
8  date, if not before, but no evidence taken on August 1.
9           MR. SLINKARD: Thank you, Your Honor.
10          THE COURT: Okay. All right. What else?
11 Anything else we need to talk about while we're all
12 here? And I should note for the record that Deputy
13 Marshal Craig Beam is-- is here in court. And from the
14 probation office, Milt Ruble is here in court as well.
15          MR. SLINKARD: Nothing further from the
16 government, Your Honor.
17          THE COURT: All right.
18          MS. BRANNON: Not from the FPD.
19          THE COURT: All right. Anyone on the phone
20 have anything further?
21          MR. CLYMER: No, Your Honor.
22          THE COURT: All right. Thank you all for
23 being available today, and we look forward to hearing
24 from you again once you've ironed out the rest of the
25 settlement. Thank you. We'll be in recess.

1      (2:22 p.m., proceedings recessed).
2
3
4              C E R T I F I C A T E
5
6
7
8   I, Kelli Stewart, a Certified Shorthand Reporter and
9   the regularly appointed, qualified and acting official
10  reporter of the United States District Court for the
11  District of Kansas, do hereby certify that as such
12  official reporter, I was present at and reported in
13  machine shorthand the above and foregoing proceedings.
14     I further certify that the foregoing transcript,
15  consisting of 17 pages, is a full, true, and correct
16  reproduction of my shorthand notes as reflected by this
17  transcript.
18     SIGNED July 30, 2018.
19
20
21
22          /s/ Kelli Stewart
23          Kelli Stewart, CSR, RPR, CCR, RMR
24
25